**In re Don Austin BALCH and Mary Ann Balch, Debtors.**

**FLORA BANK & TRUST, Plaintiff,**

v.

**Don Austin BALCH, Defendant.**

Bankruptcy No. 87–03572–DPM.

Adv. No. 88–0053(2).

United States Bankruptcy Court, E.D. Missouri, E.D.

July 18, 1988.

William M. Spieler, St. Louis, Mo., for debtors.

Gerald M. Burke, St. Louis, Mo., for plaintiff.

Curtis L. Mann, Clayton, Mo., Trustee.

**MEMORANDUM OPINION**

DAVID P. McDONALD, Bankruptcy Judge.

INTRODUCTION

Don Austin Balch and Mary Ann Balch, his wife, filed their Chapter 7 bankruptcy petition on December 7, 1987. On March 2, 1988, Flora Bank & Trust (Bank) filed its adversary complaint against Don Austin Balch seeking to deny dischargeability of a debt in the principal amount of $8,857.60 plus accrued interest of $2,159.85 as of December 7, 1987, pursuant to 11 U.S.C. § 523(a)(2)(A). Since Mrs. Balch is not a party to this litigation, any reference to the Debtor in this opinion refers only to Mr. Balch.

JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine.

FINDINGS OF FACT

For many years Don Balch owned and operated a successful variety hardware business, called JACO Variety Store, through a Gamble's franchise. All parties agree that the Debtor maintained an excellent credit relationship with the Bank from 1977 until around 1981 when Gamble itself went into bankruptcy and stopped supplying the Debtor and other Gamble hardware franchises throughout the country. As inventory dwindled, cash flow became a major problem and the Debtor was unable to meet his commitments with the Bank. Larry J. Kramer, the Bank's President, was very helpful in attempting to assist the Debtor during this period. Kramer asked the Debtor if he could obtain a co-signer on his debts and Balch indicated he believed his sister, Maggie Farmer, would help. In 1983, Kramer spoke to Maggie Farmer to see if, in fact, she could assist her brother until he was able to obtain new employment. At that time, she submitted a financial statement and indicated the family would continue to support her brother, but she would need to check with her husband to see if she could co-sign a note with the Debtor. The Bank determined her credit was good through a credit check; however, Maggie Farmer did not sign a note in 1983.

Mr. Kramer and the Bank continued to assist the Debtor until 1987. Balch remained in default on an accumulation of short term borrowings and overdrafts. The overdrafts were created by garnishments on the Debtor's checking account by the State of Illinois. Balch started a new career selling insurance. As his income increased, he began to make monthly payments on the overdrafts. The Bank explained it was necessary to write a new note that would include these miscellaneous debts, but they were only willing to write a new note if the Debtor's sister, Maggie Farmer, would co-sign. The purpose of obtaining Ms. Farmer's signature was based on the fact the Bank believed she had good credit and was solvent. Kramer insisted the Bank would not renew or extend the note without her signature. The signature of Maggie Farmer was for the benefit of the Bank.

Note 9740 was drafted on June 2, 1987 with a maturity date of December 2, 1987. No new funds were ever issued as a result of this new note. The note simply covered existing debts and approximately $4,000.00 in past overdrafts. Don Balch signed the note in the presence of Mr. Kramer, who then gave the note and a financial statement form to the Debtor in order for him to obtain Maggie's signature and her current financial statement. The Debtor testified he knew his sister was on vacation and, therefore, he mailed the note to her home in July, 1987. The note was returned to him in the mail after July 15, 1987 bearing the signature of a "Maggie L. Farmer". Balch said he was not familiar with his sister's signature and had not talked to her concerning co-signing the note in 1987. Shortly thereafter, when Balch saw Kramer driving through Flora, Illinois, the Debtor motioned for Kramer to stop. The Debtor handed Kramer the note with Maggie's signature, but without the financial statement. Although the Debtor does not recall his exact words, he concedes it was reasonable that his comments would give Kramer the impression that he had obtained his sister's signature. Kramer recalled the Debtor stating, in reference to the note, "I got it signed, here it is."

In order to complete the Bank's files, Kramer wrote a letter to Maggie Farmer indicating they needed a current financial statement since she had co-signed the note. Upon receipt of the Bank's request, Ms. Farmer contacted the Bank and denied that she had ever signed note 9740 or had ever given anyone permission to sign her name. Ms. Farmer emphatically repeated this denial during her testimony. Don Balch also denied signing his sister's name to the note and said he did not know who had signed Maggie L. Farmer.

Although Don Balch appeared to be a credible witness during most of his testimony, I find his statements concerning his sister's signature to be implausible and without credibility. It is difficult to believe the Debtor would mail a nearly $9,000.00 note to obtain his sister's signature without first discussing the matter with her. Obviously, such a discussion would have revealed her willingness to sign or not. I

further find that he knew Maggie Farmer had not signed note 9740 and deliberately mislead Larry Kramer by his verbal comments and conduct when he handed Kramer the note bearing a signature of Maggie L. Farmer.

## CONCLUSIONS OF LAW

Section 523(a)(2)(A) of the Bankruptcy Code provides:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, or 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

The Eighth Circuit has held that in order to succeed in a section 523(a)(2)(A) claim, the creditor must prove the following elements:

(1) that the debtor made false representations;

(2) that at the time made, the debtor knew them to be false;

(3) that the representations were made with the intention and purpose of deceiving the creditor;

(4) that the creditor reasonably relied on the representations; and,

(5) that the creditor sustained the alleged injury as a proximate result of the representations having been made.

*In re Jenkins*, 61 B.R. 30, 39 (Bankr.D.N. D.1986).

The Court has already found that the creditor has proven the first three elements. That is, Balch knowingly did make a false representation with the intention and purpose of deceiving the creditor. Obviously, the Bank was well aware of the Debtor's precarious financial position. It would not have written a new note without the added signature of Maggie L. Farmer and the additional financial strength that signature brought to the note. Kramer had relied on the friendship and trust that had grown over many years of business transactions between the Debtor and Kramer. Balch betrayed that trust when

he allowed Kramer to believe the signature was that of his sister. Due to this false representation, the Bank sustained the alleged injury as the proximate result of the representations having been made.

## CONCLUSION

All elements of the creditor's nondischargeability case having been proved, only the question of the appropriate relief remains. Note 9740 provides under the remedies for default: "I also agree to pay the costs you incur to collect this note, including your reasonable attorney's fees." Attorney's fees and interest are recoverable in a dischargeability complaint where the primary debt is held to be nondischargeable and the attorney's fees and interest are considered to be ancillary obligations which attach to the primary debt in question, as in the present case. *In re Hunter*, 771 F.2d 1126 (8th Cir.1985). Accordingly, the debt of Donald A. Balch to Flora Bank & Trust, represented by Note No. 9740 is not dischargeable in bankruptcy and a judgment shall be entered against Donald A. Balch and in favor of the Bank in the amount of $11,017.45, plus interest at ten percent (10%) per year, costs and reasonable attorney fees.